We're saving the government money today. Yeah, hopefully you're not sick of me yet. Good to see you again, Your Honors. Doug Keller. I'm arguing here today on behalf of all three appellants, Mr. Hurtado, Mr. Valdez, and Mr. Bueno. I wanted to start with the employment law case, Inquis, this court cited to in its order last week. In Inquis, the Supreme Court reaffirmed the general principle that the government typically violates the Constitution when it draws arbitrary distinctions between people. Now, it's true that the court then went on to hold a very narrow, a very narrow exception for employment law cases because of quote, the unique considerations applicable when the government acts as an employer as opposed to sovereign. But nothing in Inquis purports to overrule cases like Chapman that have had applied that general principle to the criminal sentencing context. So I think this is a matter of stare decisis. This court couldn't apply the Inquis exception to criminal sentencing. But setting Chapman aside, I guess I don't think it makes a lot of sense to import that exception into the criminal sentencing context. Sentencing obviously is very different than employment law. The court in Inquis was obviously concerned about, excuse me, employment law and the at-will doctrine. That importing this arbitrary test into the employment context would essentially completely undone at-will employment. There's no sort of similar concern in the sentencing context where while judges have lots of discretion, that discretion is circumscribed by the Constitution and by numerous rules. So as just a simple example, when a court issues a sentence, the sentence must be reasonable. And the courts of appeals will review that sentence for reasonableness. There is no analog in the employment context. Every time a middle manager for the government hires or fires someone, they don't get reviewed for reasonableness by a federal court. So I think for all those reasons, the Chapman supplies the general test. And that's the test that I'd ask the court to apply to this case. Okay, well let me let me follow up on that. And I have an issue here because I'm trying to figure out what sort of equal protection claim you've asserted on behalf of your clients. It did not seem to me that you're asserting what I'll characterize as the garden variety equal protection claim, where the plaintiffs or where your clients are arguing that they were subject to suspect or quasi-suspect classification. In other words, doesn't appear to be based on race, doesn't appear to be based on gender. It seemed to me that what you were asserting is a class of one claim. Can you? I think I agree with everything you just said. We're not alleging, you know, race discrimination and gender discrimination. Instead, we're essentially asserting the the, you know, the the basic test of the government can act arbitrarily when it distinguishes between people, as applied in this sentencing context. So our there is no actual distinction between the three appellants who received 90 months in prison and the one appellant, I'm sorry, the one defendant who received 70 months. And that's because the court had no meaningful basis to distinguish between them or didn't articulate one, that the equal protection clause, the due process clause, was violated. So help me understand what happened here. And I've I've read two or three times I've read the sentencing transcript in this case. The judge sentenced all four of these defendants in the same proceeding, which I found unusual. Is that common in the Southern District of California? I don't know if it's common. It wasn't, it's not common in my experience, but I don't have a lot of multi-defendant cases. Did the defendants consent to being sentenced together? I mean, we didn't object, let's put it that way. Didn't object to it. Okay. They each have their own separate counsel. That's right. And he's got all four of these defendants in front of him. And in carefully reading the transcript, I did not see where the judge at any length analyzed the factors under 18 United States Code section 3553A. That's correct, Your Honor. He basically described all of these defendants as where they were from, what they were doing, what their occupation was, they're in the boat together, etc., etc., etc. And then he proceeds, I mean, defense counsel each make their pitch, brief, very brief allocations from the defendants, and then he proceeds to sentence them 90, 90, 90 months, your clients 70 months to the fourth defendant. Did he provide any explanation on the record as to why he sentenced, I didn't see it, maybe it's there as to why he sentenced the fourth defendant to 70 months as opposed to 90. I understand counsel made an argument, but did he say anything on the record? The only thing that I can see that was different with respect, meaningfully different between the four defendants is that at one point with respect to the fourth defendant, the gentleman who reason stated by the prosecutor or something to that effect. And the reason stated by the prosecutor, as I understand it, was sort of an argument that we had some sort of enhanced acceptance of responsibility. Yes. The side deal that provided for the agreement that the government would recommend six months, I mean that the government would recommend seven months instead of 11 months, the exchange for which the defendants would recommend six months as opposed to the mandatory minimum of five months. Years. Years, I'm sorry. I couldn't find the side deal anywhere in the record. Is this something that was communicated in writing? Was it verbal? I mean, how was that side deal communicated? It was emailed to the four defendants. There's no, I guess, that email is not in the record. It was never included in the record. The judge only knew about the counsel talking about it and explaining what happened. Because it was obvious to me the judge knew about the side deal. I just wondered how? He only knew about it. So what it sounds to me like here is that you have, you've sort of packaged this as a constitutional claim, but really what we have here is sentencing disparity. And you can talk me down from my view of this. That what we have here is an appeal waiver, which means if you can't, if you don't assert a constitutional claim, I think you've got an appeal waiver problem. So now we've got these this constitutional claim. Equal protection and due process claim, right? Yes, and I think there might be other way, another non-constitutional problems with what the court did here, but we are limited to constitutional arguments on appeal and that's why we invoke the the arbitrariness test that we did. So can, do you have any case that you can point to where a court has found co-defendants who were similarly situated and sentenced differently was a violation of their constitutional rights? I can't and frankly every case I found the the fact patterns are sort of absurd where there's very obvious distinctions between the defendants. So I think the government, just 28J the case from the 8th Circuit where the alleged disparity took place when one of the co-defendants was sentenced like a month after the first co-defendant and the first co-defendant claimed that this future action violated his rights. So it seems like the question before us is whether the sentencing courts decision was arbitrary and we're reviewing for abuse of discretion, is that correct? I don't think so. I mean I think it's, since it is a constitutional claim, it is reviewed de novo. It is sort of odd because the under, there is like an underlying sentencing disparity, yes, and through the lens of a constitutional. So just because you label it constitutional, if we're gonna convert it to de novo? Well I think it's converted to de novo because there's a different test we have to meet. I mean if there were no appellate waiver here and I was free to So what's, so you think we review this de novo, which is more favorable to your client. That's right. Even though you waived the sentencing disparity, I'm just trying to understand how we're getting to de novo review when you waived, when you in the plea agreement said you would not, you had an appeal waiver so you wouldn't raise these other type of claims that would normally be abuse of discretion. Presumably those other types of claims, whatever they might be, would have a much easier substantive standard. I mean our substantive standard is not an easy one. I think we meet it, but at the end of the day we need to show that there aren't any meaningful distinctions articulated by the judge between the three appellants and the one defendant. Now I think we can do that. So this is a rational basis? I mean are we saying rational basis? Because if there was any rational basis then that's, that's not, then that's a meaningful difference? Essentially courts have used the word rational basis. They've used the word arbitrary. I think it all gets to the idea of was there a meaningful distinction articulated by the judge between our appellants and the defendant. So my main question for you is then why isn't the one, somebody asking for six years, I mean it seems like there is a distinction here. One, the one ended up asking as a result of this side deal, which I do not understand, and I'll ask your colleague across the aisle that, but, but he did end up asking for six years. Everybody asked for five years and so isn't that a rational? The, I think the problem is that the, the distinction that the court articulated, sort of by adopting what the prosecutor had said, that this side deal meant that this fourth co-defendant just really accepted responsibility from his conduct, fundamentally it's just factually not true. That, you know, regardless of whether maybe it could be true in some other case, we know it's not true in this case because defense counsel explained to the judge on the record at length why he accepted this side deal and it was nothing to do with acceptance. So the, the reason the court articulated just isn't true and I can't think of anything more arbitrary than a distinction between people based on an illusory distinction. And that sort of gets at the heart of our, our, our claim, I think, is that the, the distinction the court drew just isn't factually accurate. Would it be a rational basis for the trial court to give the lower sentence in this particular case because the fourth defendant took the deal? I, I think no. I mean, I think you'd have to be able to articulate why the deal somehow is relevant to the sentencing factors and to the extent the, the, the reason, I guess to repeat myself, the reason the prosecutor gave this isn't the actual reason that the, the government, the defense attorney told the court why the deal was accepted. So, you know, maybe in some other case that might make sense. I don't know, but I think at the very least in the context of this case, what happened here, it, it doesn't. I see everyone's taken over my time, so I'll... Gould, have any questions? Well, just to clarify what question that occurred to me. As I understand it, the, the 90 months sentence was less than the guidelines range might have permitted, correct? That's correct. So if we were to vacate and remand for resentencing here, I assume the district court couldn't give you guys more than 90 based on the guidelines as a punishment for your appeal? No, he, he could not. There's cases that... Cases say he couldn't do that. Yes, and I can't imagine this Judge Wood, so I, I, there's certainly cases that say that you can't get a higher sentence on remand because you appealed, that you appealed lower. What was the guideline range? I'm sorry, Judge Gould, go ahead. I believe the low end was around 11 years. 11 years. And was the guideline range the same for all four defendants? The court calculated the guideline range is the same for all four defendants. So none of them had any criminal history? No, they did not. Strictly based on drug quantity. Based on drug quantity. And I think the reason why all four defendants got below guideline sentence is the conditions of confinement on the Coast Guard cutter that, you know, they were treated terribly for nearly a month on the cutter. And I think that really weighed on the judge. And you're the fourth defendant, Garcia, his, his sentence is not on appeal, correct? That's correct, Your Honor. So if the court were to credit your argument and vacate the sentences of Hurtado, Sinisterra, Valdez, Medina, and Bueno-Sanes and send it back to the district court to reconsider, I guess your premise is the district court would have to give you, give them the 70 months? I think so, Your Honor. Yes, Your Honor, I think so. Very interesting. Okay. Well, thank you. Thank you. Good morning, and may it please the court. Ajay Krishnamurthy for the United States. There existed a rational basis to impose a lower sentence on the fourth defendant in this case, whether it's called the acceptance of responsibility or recognition of reality or something else. There's a reason that almost no defendant accused and convicted of a serious crime walks in and asks for a time served sentence. That's because they, through their defense counsel, recognize that putting forward a realistic recommendation will inert their benefit at sentencing. I don't understand. I mean, do you truly believe, or I don't know, were you the prosecutor below? I was not. Okay. Why was there a side deal? Why wasn't that represented in the plea agreement? It's never good to do side deals. I understand, Your Honor. So the plea agreement established the undisputed guidelines range of 168 to 210 months, established that the prosecution would recommend a sentence no greater than the low end of the guidelines range, and allowed the defense to argue for any sentence above the statutory minimum. After the plea agreement, the prosecution approached all four defendants in this case with an effort to narrow the range. There was an effort to narrow the range for a number of reasons. The first is that we believe that that range was more appropriate than the statutory minimum in this case. These defendants were arrested with 500 kilograms of cocaine. And so while there may be a range of appropriate sentences, we didn't believe that the 60-month minimum was one of them. But apparently, there's something regarding the conditions that they were kept in those 27 days after they were captured that caused you to make this deal in the first place. I just don't understand why you added a side deal. But you did, so here we are. And I'm just trying to figure out, it seems like what's represented in the record, and I say in the record is what the district court said, I agree with the government. And the government, at that moment, at the sentencing, apparently said, oh, there's a super acceptance here that we need to acknowledge. Well, there's a super acceptance in the guidelines that qualifies for super acceptance, but this is just kind of an additional sort of, hey, we're going to say he had super accepted. But I'm just trying to figure out, because it was also referred to that maybe Mr. Garcia was less culpable, and I just question here is, do you truly view Mr. Garcia as less culpable or more deserving of a sentence of seven years rather than 11 years, as the prosecutor originally recommended to the court for all four defendants? There was no information about the relative culpability of the defendants. We didn't have any information about the offense, other than that they were all arrested on the boat. This recommendation was solely tied to the sentencing recommendation in this case, as part of that additional deal. It seems that if the prosecutor offered 11 years for all defendants, the prosecutor thought all of the defendants were truly the same. And in fact, the prosecutor said they're all in the same boat. And so I'm just trying to figure out, how does Mr. Garcia asking for one year more make him so different from his co-defendants? Why isn't it illusory? Your Honor, as I mentioned before, I don't think that, I mean, I think this happens almost in every sentencing proceeding. That a defendant tries to put forward a recommendation that they think is realistic in light of the district court judge they have. I understand that the court may disagree with the extent of that difference in this case, but that doesn't make these three defendants' sentences unconstitutional. And I'd like to start by addressing the three cases that were in the court's most recent order. There was Chapman, Ruiz-Cairon, and then Enquist. So Ruiz-Cairon and Chapman both basically hold that a penalty that can be based on arbitrary factor may be unconstitutional. We don't think that those two cases are a good fit for this analysis because the defendants haven't identified any error with their own sentences. They didn't have any entitlement to a mandatory minimum sentence. They didn't have any entitlement to the same sentence as their co-defendant. In another case, one could very well imagine that a district court may have liked or appreciated someone's allocution more. We do think that Enquist is extremely helpful in determining this case. The only thing that they're left with here is some sort of equal protection claim that they were not treated differently. They were treated differently on the basis of the factor that they disagree with. But what Enquist establishes is that in highly discretionary sentencing proceedings like this one, there is the chance that defendants will be treated, or in that case, it was an employment context. But in an analogous context, there is a chance that defendants will be treated differently on the basis of subjective discretionary determinations. And that is normally policed under the abuse of discretion standard. When that happens, it's not a constitutional issue. And of course, the defendants here have waived any abuse of discretion argument they might have. If I can... Let me just ask you if you think the rationale of the sentencing factors is served by the sentences in this case. I do. Tell me how. I mean, this was a significant amount of drugs. And so the guidelines range, you know, promote general deterrence, specific deterrence, were incredibly high. In this case, you know, we believe that a below-guideline sentence was warranted in light of the lack of criminal history that we knew of. And frankly, probably in light of the relatively low level of the offenders in this case. But that's true for all of them. That's true. But, Your Honor, the prosecution trades concessions that don't necessarily base... That aren't necessarily based on culpability in a number of cases. If one defendant goes to trial and one defendant doesn't, there may be extra concessions in that case. This was a similar concession in that regard. That's a rational basis for a district court to consider. Were all of the defendants given a two-level decrease from the adjusted offense level for acceptance of responsibility? They were given a three-level decrease, I believe. So two levels for acceptance of responsibility and a third level for timely notification of plea. Total of three. Correct. I think... I believe that's true. Did the judge articulate on the record? The judge? Other than saying, I agree with the prosecutor in addressing the section 3553A, did he draw any distinction on the record between the three defendants that are appealing and the defendant that got the 70-month sentence? The court did not. The only rationale given was, after having considered the recommendation of the prosecutor, I impose a 70-month sentence. And that sentence was actually two months... I mean, I don't want to... It's a small difference. But he sentenced that defendant to two months less than what the defendant requested under the side deal. Correct. Seventy months rather than 72. Correct. So the district court went under the range proposed by the parties in this case, which is relatively uncommon. And so are you saying we just need a rational basis? Or what's your... How do you say we view this? My argument is that this isn't a constitutional issue at all. I think, as the court noted, this is an argument that the court either didn't adequately explain its sentence or that there is an unworked sentencing disparity. And the defendants, by the terms of their plea agreements, have waived that argument. I'm happy to address any other questions. If we were going to view it as a constitutional, how do we look at it? I think Enquist is the best authority on point. I don't think that Ruiz-Cayron and Chapman can be applied in this way with the defendant's own sentences. You're saying because there's discretion involved here, that precludes the constitutional claim. Correct. That precludes the equal protection claim. Right. Exactly. I see that I'm over my time. Unless the court has any other questions. Thank you. I have no questions. Yes.  Thank you. I have no questions. I'll give you a minute. I think you were over your time. I was. Yeah, I was way over my time. Okay. I'll give you a minute. I just have one brief point, really. We're not raising an unwarranted disparity argument. We could have if we hadn't waived that right, but we're raising a different argument with a different test, and we now have to meet this different test with much higher substantive standard than simply arguing unwarranted disparity. And so, for the reasons I've explained, I think we can meet that higher burden, but I don't think our argument on appeal can somehow be transformed into some different claim because we could have raised that with a different claim. Is it an abuse of discretion, rational basis test? It's certainly a rational basis test. You know, I don't want to fight against abuse of discretion here. I think the cases say that this is de novo review, but at the end of the day, I think it doesn't matter the standard of review. The sort of fundamental point under any standard of review is that the reason the court gave to distinguish our appellant, the appellants on appeal, is not true and unsupported in the record. So, I don't think it matters what standard you apply to that. Well, if we apply rational basis, I mean, that's a pretty low bar, it seems like. It is a low bar, but I think we cleared here because the one reason the court gave to distinguish is factually false. So, I think that's the reason, and let me sort of unpack that just a little bit. The reason the court gave is that Mr. Garcia, the fourth co-defendant, just really accepted responsibility, which is why he was asking for six years as opposed to five. But we know from what his attorney told the court, that's just not true. So, the reason the court gave to distinguish the defendants is just not supported in the record, period, under any standard. Counsel, can we decide this case in your favor without seeming to give some, but without discussing one way or the other the validity of this case with the side agreement? Yes, absolutely. You know, I don't think the side agreement is relevant context for this case, but I don't think ultimately that the court's holding would need to hinge on whether these sort of side agreements are appropriate or not. Okay. Thank you. Well, thank you. Thank you, Your Honors. Both for the novel issue presented in this case. We appreciate the presentations here today. And so, the case of United States of America versus Duque Hurtado, Semestra, Winston Gabriel, Valdez, Medina, and Leonardo Abad-Bueno science is now submitted.
judges: Gould, Murguia, Christensen